# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL CASE NO. 5:22-cv-00003-MR

| | |
|---|---|
| QUAMAINE DESHAWN CARMICHAEL, ) ) ) Plaintiff, ) ) vs. ) ) JOHNNY XAYAVONG, ) ) Defendant. ) ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant Johnny Xayavong's Motion for Summary Judgment [Doc. 36].

## I. BACKGROUND

The incarcerated Plaintiff Quamaine Deshawn Carmichael, proceeding pro se, is serving a sentence of more than 23 years in the North Carolina Department of Adult Corrections for offenses including attempted first-degree murder (principal). The Plaintiff filed this action pursuant to 42 U.S.C. § 1983 addressing an incident that allegedly occurred while he was incarcerated at the Alexander Correctional Institution.[1] [Doc. 1: Complaint]. The Plaintiff's unverified Complaint passed initial review against Defendant

---

[1] The Plaintiff is presently incarcerated at the Granville Correctional Institution.

Xayavong for the use of excessive force. [Doc. 8: Order on Initial Review]. The Plaintiff seeks $300,000 in compensatory damages. [Doc. 1-1: Complaint Attach. at 6].

Defendant Xayavong filed the instant Motion for Summary Judgment. [Doc. 36: MSJ]. Thereafter, the Court entered an Order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 41: <u>Roseboro</u> Order]. The Plaintiff filed an unverified Response and supporting documents.[2] [Doc. 42: MSJ Response;[3] Doc. 42-1: MSJ Memo.;[4] Doc. 42-2: Plaintiff's Decl. and Response Ex.; Doc. 43: Sealed Medical Records]. The Defendant filed a Notice of Intent to Not File a Reply [Doc. 44: Notice]. This matter is ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is

---

[2] Only the Plaintiff's Declaration is verified.

[3] Titled "Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment."

[4] Titled "Memorandum of Law in Support of Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment."

2

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable

3

jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

4

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

Officer Xayavong was working at the Alexander CI Green Unit on April 28, 2021. [Doc. 38-1: Xayavong Decl. at ¶ 5]. At that time, Green Unit management had enacted a rule that all offenders who were out for their dayroom recreation must be seated in the dayroom, in order to combat problems with offenders sliding contraband from cell door to cell door. [Doc. 38-1: Xayavong Decl. at ¶ 7].

At approximately 3:57 p.m., Officer Xayavong and Officer Moonyham entered the Green Unit. [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 6; Doc. 38-1: Xayavong Decl. at ¶ 6]. Officer Moonyham told the Plaintiff to sit down. [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 7; Doc. 38-1: Xayavong Decl. at ¶ 9]. The Plaintiff was "non-compliant" with that order. [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 8; see Doc. 38-1: Xayavong Decl. at ¶ 10]. The Plaintiff and Officer Moonyham "exchanged words." [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 9; see Doc. 38-1: Xayavong Decl. at ¶ 10]. The Plaintiff was "non-aggressive." [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 9]. Officer Moonyham discharged pepper spray at the Plaintiff's face. [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 10; Doc. 38-

5

1: Xayavong Decl. at ¶ 12 (describing this as one "puff" of pepper spray)]. The Plaintiff "immediately, turn[ed] [his] back towards the two officers and head[ed] to the nearest wall." [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 11]. Officer Xayavong perceived Officer Moonyham's discharge of pepper spray as a "misfire." [Doc. 38-1: Xayavong Decl. at ¶¶ 12]. Officer Xayavong then administered one discharge of pepper spray to the Plaintiff's face.[5] [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 12; Doc. 38-1: Xayavong Decl. at ¶ 13]. No further use of force occurred. Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 15; Doc. 38-1: Xayavong Decl. at ¶ 17]. The Plaintiff was promptly escorted to the Red Unit to be medically assessed and for a decontamination shower. [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 14; Doc. 38-1: Xayavong Decl. at ¶ 16].

The Plaintiff has a history of nasal congestion from pepper spray, for which he had received a surgical procedure about a year before the incident at issue. [Doc. 43: Med. Ex. at 4]. Both nostrils were initially congested following the incident, and one nostril remained congested the next day. [Id. at 1].

---

[5] Officer Xayavong states that the Plaintiff did not face the wall and submit to hand restraints after Officer Moonyham discharged a "puff" of pepper spray; rather, the Plaintiff went to the wall and submitted to cuffs only after Xayavong administered pepper spray. [Doc. 38-1: Xayavong Decl. at ¶ 15]. Officer Xayavong states that his use of pepper spray was meant solely to regain to control the situation after the Plaintiff refused orders to be seated, it was not meant to injure or otherwise harm the Plaintiff, and it was not done to be cruel or evil. [Id. at ¶¶ 18-19].

6

Officer Xayavong has filed a video exhibit [Doc. 38-3: Manually Filed Video Exhibit] containing footage from the prison dayroom that show the following events:

| | |
|---|---|
| 3:53:37 | Seven inmates are seated in the dayroom; the Plaintiff stands up and walks across the dayroom to greet orderlies who enter the area |
| 3:54:35 | The Plaintiff approaches the table where he had been seated, but he remains standing |
| 3:55:26 | Officer Moonyham enters the dayroom, addresses the offenders, and gestures while five inmates, including the Plaintiff, are standing |
| 3:55:34 | Officer Xayavong comes into view and stands beside Officer Moonyham |
| 3:55:39 | The Plaintiff walks across the dayroom while Moonyham continues speaking and gesturing |
| 3:55:57 | The Plaintiff stops and stands near a table, and the officers leave the camera's view |
| 3:56:02 | The Plaintiff walks back across the dayroom and stands by his original table |
| 3:56:15 | An officer briefly comes into view, pointing into the dayroom and apparently conversing with someone off-camera |
| 3:56:21 | The Plaintiff walks across the dayroom again and nears the area where the officers had appeared |
| 3:56:55 | The Plaintiff looks at someone off-camera, points to himself, shakes his head side-to-side, and walks towards the speaker |

7

| | |
|---|---|
| 3:57:11 | The Plaintiff stops walking, continues speaking, and again shakes his head side-to-side |
| 3:57:12 | Officer Moonyham's hand appears and deploys pepper spray towards the Plaintiff; the Plaintiff turns his face away from the spray, turns around, and takes four steps further into the dayroom, followed by Officers Xayavong and Moonyham |
| 3:57:16 | The Plaintiff turns his head and appears to converse with Officer Xayavong as Xayavong approaches the Plaintiff |
| 3:57:18 | Officer Xayavong deploys a short burst of pepper spray at the Plaintiff's face from the side; the Plaintiff immediately turns his face away, turns his body towards the wall, steps towards the wall, and puts his hands up |
| 3:57:26 | The Plaintiff is handcuffed |
| 3:57:44 | Additional correctional staff arrive |
| 3:57:58 | The Plaintiff is escorted out of the dayroom |

## IV. DISCUSSION

### A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761

8

(4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 F. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

Here, the forecast of evidence construed in the light most favorable to the Plaintiff demonstrates that the Plaintiff was standing in the Dayroom contrary to policy; that he refused to be seated when Officer Moonyham ordered him to do so; that Officer Moonyham deployed pepper spray toward the Plaintiff's face, and the Plaintiff turned away from officers and began walking in the general direction of a wall; and that Officer Xayavong deployed

9

a second burst of pepper spray to the Plaintiff's face, after which the Plaintiff submitted to hand restraints. The Plaintiff's contention that he "immediately, turn[ed] [his] back towards the two officers and head[ed] to the nearest wall" after Moonyham sprayed him is conclusively refuted by the objective video evidence and need not be accepted by the Court. [Doc. 42-2 at 6: Plaintiff's Decl. at ¶ 11]; Scott, 550 U.S. at 380. The video footage confirms that the Plaintiff did turn away from officers and begin to walk away from them, in the general direction of a wall, after Moonyham sprayed him. However, the Plaintiff then began turning towards Xayavong, and away from the wall, as Xayavong approached him. It was only after Defendant Xayavong sprayed the Plaintiff that he stepped up against the wall and put up his hands. It was objectively reasonable for Defendant Xayavong to apply this minimal use of force in light of the Plaintiff's refusal to comply with Officer Moonyham's orders. The Plaintiff's subjective belief that the use of pepper spray was not permitted by prison policy under these circumstances is of no legal significance. See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation"); see, e.g., Kitchen v. Ickes, 116 F.Supp.3d 613, 628-29 (D. Md. July 14, 2014) (plaintiff

10

Case 5:22-cv-00003-MR   Document 45   Filed 08/30/23   Page 10 of 12

inmate's subjective belief that a lesser amount of pepper spray could have been used or that the officer should have entered the cell while plaintiff continued to hold his cellmate restrained on the floor, was of no legal significance). Accordingly, Defendant Xayavong is entitled to summary judgment on the Plaintiff's excessive force claim.

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not forecast evidence that the Defendant violated a constitutional right, the Defendant is also entitled qualified immunity. Accordingly, summary judgment is granted on this ground as well.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendant's Motion for Summary Judgment, and this action is dismissed with prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 36] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: August 29, 2023

Martin Reidinger
Chief United States District Judge